UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

WENDY A. TEDESCO,

                Plaintiff,

      -v-

I.B.E.W. LOCAL 1249 INSURANCE FUND;
EDWIN MOREIRA, JR., WILLIAM BOIRE,
CHARLES BRIGHAM, JAMES C. ATKINS,
MICHAEL GILCHRIST, and SCOTT LAMONT,
as Trustees of the Fund; and DANIEL R.
DAFOE, as Administrator of the Fund,

                Defendants.

------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 21, 2017

14-cv-3367 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

      Plaintiff Wendy Tedesco, a beneficiary of the IBEW Local 1249 Insurance

Fund (the "Fund") Plan (the "Plan") since 2006, filed the instant ERISA action in

2014 seeking, inter alia, recovery for past and future benefits under the Plan.

Specifically, as relevant here, plaintiff alleges that the Fund's denial of coverage for

treatment by her social worker Shaun Levine and psychiatrist Dr. Eric Nicholson[1]

as not "medically necessary" was a violation of the Plan terms.

      On October 28, 2015, the Court granted defendants' motion for summary

judgment on this claim. (ECF No. 50.) Applying then-prevailing Second Circuit

precedent, the Court concluded that the Fund's adverse-benefit decision was not

---

[1] The Fund approved as "medically necessary" twice weekly consultations with Dr. Nicholson for 16 weeks but determined that additional treatment would only be covered upon submission of documentation of continued medical necessity. With regard to Dr. Nicholson, plaintiff only challenges this 16-week temporal limitation.

"arbitrary and capricious." (Id.) Plaintiff subsequently appealed this court's decision.

On appeal, the Second Circuit found that the adverse-benefit notifications that plaintiff received were deficient under 29 C.F.R. § 2560.503-1. Tedesco v. I.B.E.W. LOCAL 1249 Ins. Fund, 674 Fed. App'x 6, 8 (2d Cir. 2016). The Second Circuit further explained that after this Court's October 28, 2015, decision and while the appeal was pending, there was a potentially applicable change in Second Circuit law. Specifically, in Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ., the Second Circuit held that "a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed de novo in federal court, unless the plan . . . can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent and harmless." 819 F.3d 42 (2d Cir. 2016) (emphasis in original). Accordingly, the Second Circuit vacated this Court's October 28 decision in part and "remanded so that [this Court] may consider in the first instance whether, under Halo, these procedural deficiencies warrant de novo review of Tedesco's denial-of-benefits claim, and, if so, whether the claim should still be dismissed."[2] Tedesco, 674 Fed. App'x at 8.

---

[2] On appeal, the Second Circuit also affirmed this Court's denial of plaintiff's third cause of action regarding defendants' right to off-set benefits. See Tedesco, 674 Fed. App'x at 8. The Second Circuit further held that "the Trustees . . . have the right to recover, through setoff, any benefit overpayments . . . " and "remand[ed] for the district court to determine the amount of money the Fund is entitled to recover." Id. As discussed below, however, defendant's claim to recover overpayments was voluntarily dismissed and there is no pending case or controversy on this issue.

Following the Second Circuit's Mandate, the parties filed renewed cross-motions for summary judgment. Having reviewed those submissions, this Court determines that under <u>Halo</u>, the Fund's adverse-benefit decision at issue here is entitled to <u>de novo</u> review.

Having conducted such <u>de novo</u> review, the Court concludes that with regard to Dr. Nicholson, there are no disputes of material facts and defendants are entitled to judgment as a matter of law. However, the Court concludes that with regard to Levine, there are genuine disputes of material facts regarding whether plaintiff was improperly denied coverage under the Plan. As the Court discusses in detail below, it currently appears that the evidence favors plaintiff's position on this point. Nevertheless, because there are competing expert opinions, the Court is prepared to conduct a trial on this issue where it can assess the credibility of the relevant medical experts.

The Court emphasizes that its instant decision results particularly from the applicable standard of review. Accordingly, defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART and plaintiff's cross-motion for summary judgment is GRANTED IN PART and DENIED IN PART.

I.    BACKGROUND

This Court provided a detailed recitation of the relevant facts in its October 28, 2015, Opinion & Order. (<u>See</u> ECF No. 50.) The Second Circuit vacated that decision in part. (ECF No. 83.) However, the Second Circuit did not disturb—nor

do the parties here dispute—the majority of the Court's factual findings relevant to the instant motions. The Court again provides an overview of those findings.

Plaintiff, a mother of two and part-time medical assistant, suffers from Obsessive-Compulsive Disorder ("OCD") and other mental illnesses. Her OCD symptoms are severe and include fear of physical and moral contamination, skin picking, excessive cleaning, and fear of certain numbers. She scored a level 36 out of a maximum level 40 on the Yale-Brown Compulsive Scale. Plaintiff saw a number of mental health providers for her condition, including psychiatrist Dr. Eric Nicholson, M.D. and licensed social worker Shaun Levine.

Plaintiff's husband is a member of the IBEW Local 1249 union. The IBEW Local 1249 Insurance Fund Trustees ("Trustees") established and administer the Plan, which provides health benefit payments to about 2,000 participants and their eligible spouses and dependents. Plaintiff has been a beneficiary of the Plan since 2006.

In 2013, defendant Daniel Dafoe, the Fund's day to day administrator, initiated a review of plaintiff's claims for treatment by Levine and Dr. Nicholson. The Fund retained Corporate Care Management ("CCM"), an organization who has a contract with the Fund, to review plaintiff's claims. CCM engaged Dr. David T. Anthony, M.D., a board-certified psychiatrist, to conduct the review of plaintiff's claims. Dr. Anthony's report was based on a review conversation with Levine and an examination of plaintiff's progress notes from Levine and Dr. Nicholson. Dr. Anthony did not speak with Dr. Nicholson. Dr. Anthony concluded that

continued visits with Levine were not medically necessary, and that continued visits with Dr. Nicholson were medically necessary once per week, for 13-20 weeks, followed by monthly sessions for 3 to 6 months.

On October 16, 2013, Dafoe sent a letter to plaintiff notifying her that the Plan would no longer cover visits with Levine and that it would cover "once (1) a week consultation[s] with a Psychologist\psychiatrist for 13-20 weeks followed by a monthly booster session for an additional 3-6 months." (Declaration of Yong Hak Kim ("Kim Decl.") Ex. 4, ECF No. 95-4.) The letter stated that "[a]ny variation from this would have to be approved by the Fund Office prior in consultation with its medical advisers." (Id.)

On November 7, 2013, plaintiff appealed the Fund's determination. Plaintiff included with her appeal letters from herself, Dr. Nicholson, Levine, plaintiff's former psychologist Dr. Stephen Dankyo, and plaintiff's former psychiatrist Dr. Arthur Badikian. The Fund requested that CCM engage a second expert to review plaintiff's case. CCM retained board-certified psychiatrist Michael A. Rater, M.D. Dr. Rater's review was based on teleconferences with Levine, Dr. Nicholson, Dr. Dankyo, Dr. Badikian, as well as medical and non-medical documentation including therapy progress notes, the letters from all the providers, and the letter from plaintiff. Dr. Rater concluded that continued visits with Levine were "not medically necessary" and that "continued sessions with Dr. Nicholson are medically necessary," recommending twice-weekly visits for 16 weeks followed by

reassessment of the need for further treatment. (Kim Decl. Ex. 8, ECF No. 95-8, at 17-19.)

On January 9, 2014, the Trustees reviewed plaintiff's appeal and examined the record from the two hired CCM experts, plaintiff, and her providers. The Trustees determined that the Plan would not cover further visits to Levine because they are not medically necessary, but that it would cover twice weekly visits to Dr. Nicholson for 16 weeks, at which time an updated letter of medical necessity could be submitted for consideration. Defendants informed plaintiff of the decision on January 14, 2015. At the end of the 16-week period, plaintiff did not submit any additional documents about the continued medical necessity of continued treatment by Dr. Nicholson.

Plaintiff filed the operative complaint in this action in October 2014, advancing five claims. Defendants answered the complaint and asserted a counterclaim to recover alleged payments improperly paid by the Fund to plaintiff. In July 2015, plaintiff filed a motion for summary judgment and defendants filed a cross-motion for summary judgment on all of plaintiff's claims as well as on their counterclaim. On October 28, 2015, this Court granted defendants' motion in its entirety and denied plaintiff's motion. (ECF No. 50.) After the Court's decision but before entry of judgment (and plaintiff's appeal), the Court granted defendants' request to voluntarily dismiss their counterclaim pursuant to Federal Rule of Civil Procedure 41(a)(2). (ECF No. 80.) Plaintiff then timely appealed this Court's October 28 Opinion & Order to the Second Circuit.

Plaintiff appealed this Court's decision as to two claims only—plaintiff's denial-of-benefit claim and plaintiff's off-set claim.[3] On appeal, the Second Circuit affirmed this Court's dismissal of plaintiff's off-set claim. Tedesco, 674 Fed. App'x at 8-9. With regard to the denial-of-benefit claim, however, the Second Circuit noted that after this Court issued its decision and while the appeal was pending, the Second Circuit "held in Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ., 819 F.3d 42 (2d Cir. 2016), that 'a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed de novo in federal court, unless the plan . . . can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent and harmless.'" Id. at 7 (quoting Halo, 819 F.3d at 58) (emphasis in original). The Second Circuit thus "remand[ed] so that the district court may consider in the first instance whether, under Halo, these procedural deficiencies warrant de novo review of Tedesco's denial-of-benefits claim, and, if so, whether the claim should still be dismissed." Id. at 8.

Following the Second Circuit's Mandate, the parties filed renewed cross-motions for summary judgment. Defendants argue that following Halo, this Court should still apply the arbitrary and capricious standard in reviewing plaintiff's denial-of-benefit claim. Defendants further argue that under either standard, the Fund's adverse benefit decision was proper. In contrast, plaintiff argues that

---

[3] In this claim, plaintiff challenged the Fund's right to off-set the overpayment of benefits.

following <u>Halo</u>, her denial-of-benefit claim should be reviewed <u>de novo</u>, and that under this standard of review the Fund's adverse benefit decision was improper.

## II. LEGAL STANDARDS

### 1. <u>Summary Judgment</u>

Summary judgment may not be granted unless a movant shows, based on admissible evidence in the record placed before the Court, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). On summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." <u>Dickerson v. Napolitano</u>, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial. <u>Price v. Cushman & Wakefield, Inc.</u>, 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011); <u>see also</u> <u>Wright v. Goord</u>, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." <u>Hicks v. Baines</u>, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted). Only disputes relating to material

facts—i.e., "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

    2.    Standard of Review

As described above, plaintiff's sole remaining claim is that the Fund's two "medically necessary" determinations—1) that plaintiff's continued visits to Levine are not medically necessary and 2) that plaintiff's visits with Dr. Nicholson are medically necessary two times per week for sixteen weeks and thereafter must be reviewed for continued medical necessity—violate the Plan terms and plaintiff was thus improperly denied benefits under the Plan.

A denial of benefits is to "be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  When the plan gives the administrator or fiduciary such discretionary authority, the Court "will not disturb the administrator's ultimate conclusion unless it is arbitrary and capricious."  Hobson v. Metro. Life Ins. Co., 574 F.3d 75, 82 (2d Cir. 2009) (internal quotation marks omitted).  Here, it is undisputed that the Plan gives the Trustees discretion to determine benefits eligibility and construe the terms of the Plan.

On appeal, however, the Second Circuit noted that there has been a recent development in the law regarding the applicable standard of review.  Specifically, the Second Circuit recently made clear in Halo that "when denying a claim for

benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed _de novo_ in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent _and_ harmless." 819 F.3d at 57-58 (emphasis in original); see also Salisbury v. Prudential Ins. Co. of Am., Case No. 15-CV-9799, 2017 WL 780817, at *3 (S.D.N.Y. Feb. 28, 2017) ("In short, Halo held that if the plan administrator does not strictly comply with the Department of Labor's regulation governing the processing of an employee's claim, then _de novo_ review applies to the denial of benefits, regardless of whether the plan vests discretion with the administrator.")

On appeal in this case, the Second Circuit held that "the adverse benefit notifications [plaintiff] received on October 16, 2013 and January 14, 2014 omitted information that was required by 29 C.F.R. § 2560.503-1 . . . insofar as these notifications—which stated that visits with her social worker and more than twice-weekly visits with her psychiatrist were not 'medically necessary'—failed to provide 'either an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request.'" Tedesco, 674 Fed. App'x at 8. In other words, the Plan failed to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1. Accordingly, the Second Circuit remanded for this court to determine "whether,

under Halo, these procedural deficiencies warrant de novo review of Tedesco's denial-of-benefits claim, and, if so, whether the claim should still be dismissed." Id.

This Court concludes that under Halo, these procedural deficiencies do warrant de novo review in this case. Critically, the Second Circuit in Halo explained that "the plan 'bears the burden of proof on this issue since the party claiming deferential review should prove the predicate that justifies it.'" Halo, 819 F.3d at 57-58 (quoting Sharkey v. Ultramar Energy Ltd., 70 F.3d 226, 230 (2d Cir. 1995)). Defendants have not met their burden here.

The entirety of defendants' argument on this point in their opening brief is two sentences long: "[T]he fund provided a full and fair review of Ms. Tedesco's Claim and any procedural deficiencies were inadvertent and harmless. Thus, Halo, supra (and de novo review) does not apply here." (Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defs' Mem. in Supp."), ECF No. 88, at 15.) This conclusory statement, which is devoid of any further explanation, is insufficient to carry defendants' burden.[4] See, e.g., Salisbury, 2017 WL 780817, at *5 ("[Defendant] does not make any arguments as to why this exception [to de novo review] should apply and therefore has not met this burden.") In all events, the Court cannot conclude that the procedural deficiencies were inadvertent and harmless. The Second Circuit noted that in addition to the deficiency regarding the

---

[4] Ordinarily, the Court will not consider arguments made for the first time in reply. Given that plaintiff did have an opportunity to respond to defendant's additional arguments in plaintiff's reply on their cross-motion, the Court has considered defendants' additional arguments on this issue. As discussed below, these arguments are without merit.

lack of explanation for the Plan's "medically necessary" determination, the "overpayment notifications [sent to plaintiff] were procedurally deficient" and did not comply with 29 C.F.R. § 2560.503-1.  <u>Tedesco</u>, 674 Fed. App'x at 8-9.  Thus, the Plan has not "otherwise established procedures in full conformity with the regulation" as required to warrant arbitrary and capricious review here.  <u>Halo</u>, 819 F.3d at 57-58.[5]  Accordingly, under <u>Halo</u>, this Court reviews the Fund's adverse-benefit determination <u>de novo</u>.

Under the <u>de novo</u> standard of review, the Court reviews "all aspects of the denial of an ERISA claim, including fact issues."  <u>Kinstler v. First Reliance Standard Life Ins. Co.</u>, 181 F.3d 243, 245 (2d Cir. 1999).  Furthermore, "[i]n conducting a <u>de novo</u> review, the Court gives no deference to the insurer's interpretation of the plan documents, its analysis of the medical record, or its conclusion regarding the merits of the plaintiff's benefits claim."  <u>McDonnell v. First Unum Life Ins. Co.</u>, Case No. 10-cv- 8140, 2013 WL 3975941, at *12 (S.D.N.Y. Aug.

---

[5] Furthermore, even though she does not bear the burden on this issue, plaintiff has put forth a compelling argument that defendants' procedural deficiencies in denying her claim were not harmless.  Both plaintiff and Dr. Nicholson himself state that had the Fund provided an explanation for its determination that Levine's services were not medically necessary, Dr. Nicholson would have addressed that topic, as he does by declaration on the instant motion.  (See Memorandum of Law in Opposition to Defendants' Summary Judgment Motion, and in Support of Plaintiff's Cross-Motion ("Pl.'s Mem. in Opp."), ECF No. 96, at 10; Declaration of Eric Nicholson, M.D., Ph.D. ¶¶ 7-8 ("Nicholson Supp. Decl."), ECF No. 93.)  In their opposition to plaintiff's cross-motion, defendants argue that the deficiency was harmless because "subsequent to the determination letter, Plaintiff did request information regarding her appeal; the Fund's response to that request included the clinical judgment—the independent expert reports."  (Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Further Support of Defendants' Motion for Summary Judgment ("Defs.' Mem. in Opp."), ECF No. 99, at 5-6.)  Critically, however, this information was not requested nor provided until <u>after</u> the administrative appeal was decided (<u>see</u> Dafoe Aff. ¶¶ 25-26, ECF No. 36.); the procedural deficiency thus cannot be said to have been harmless to such appeal.

5, 2013); see Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 112 (1989). Rather, "[w]hen using de novo review, the Court 'stands in the shoes of the original decisionmaker, interprets the terms of the benefits plan, determines the proper diagnostic criteria, reviews the medical evidence, and reaches its own conclusion about whether the plaintiff has shown, by a preponderance of the evidence, that she is entitled to benefits under the plan.'" Tretola v. First Unum Life Ins. Co., Case No. 13-cv-231, 2015 WL 509288, at *22 (S.D.N.Y. Feb. 6, 2015) (quoting McDonnell, 2013 WL 3975941, at *12); see also Mario v. P & C Food Markets, Inc., 313 F.3d 758, 765 (2d Cir. 2002) ("Where 'medical necessity' is a prerequisite for entitlement to a benefit under an ERISA plan, the burden of proof will generally be on the plan participant.").

3.    Scope of Review

"[W]hen reviewing claim denials, whether under the arbitrary and capricious or de novo standards of review, district courts typically limit their review to the administrative record before the plan at the time it denied the claim." Halo, 819 F.3d at 60.  In DeFelice v. American International Life Assurance Co., the Second Circuit noted, however, that "the decision whether to admit additional evidence is one which is discretionary with the district court, but which discretion ought not to be exercised in the absence of good cause."  112 F.3d 61, 66 (2d Cir. 1997).  The Second Circuit explicitly expanded upon this principle in Halo, "hold[ing] that good cause to admit additional evidence may exist if the plan's failure to comply with the claims-procedure regulation adversely affected the development of the

13

administrative record." 819 F.3d at 60.  The Court explained that "[e]ntitling a claimant to de novo review based on a plan's failure to comply with the claims-procedure regulation may be cold comfort if the plan's own compliance failures produced an inadequate administrative record that would prevent a full and fair hearing on the merits."  Id.

Now before this Court, plaintiff seeks to supplement the administrative record with an April 11, 2017, declaration from Dr. Nicholson.  (See Declaration of Eric Nicholson, M.D., Ph.D. ("Nicholson Supp. Decl."), ECF No. 93.)  At first blush, it appears that good cause exists to do so.  The Second Circuit explained that the adverse-benefit notifications that plaintiff received were procedurally deficient in that they failed to provide either an explanation of the scientific or clinical judgment for the Fund's determination, applying the terms of the Plan to plaintiff's medical circumstances, or a statement that such explanation will be provided free of charge upon request.  Dr. Nicholson explains in his April 11 declaration that as a result he did not have a full opportunity to provide his clinical judgment or recommendations concerning plaintiff's medical condition or treatment in response to the Fund's determination.  Specifically, he states that had he "been provided with Dr. Anthony's report or informed of the basis for his judgment or the Fund's analysis . . . [he] would have explained more clearly and specifically why, in [his] clinical judgment, Ms. Tedesco needed Mr. Levine's services, as well as my services for far longer than 20 week."  (Nicholson Supp. Decl. ¶¶ 7-8.)  This case thus appears to present the good cause envisioned by the Second Circuit in Halo where

de novo review would be insufficient given potential gaps in the administrative record as a result of the Plan's own compliance failures.

However, this Court has reservations about exercising its discretion to supplement the administrative record because plaintiff, throughout this litigation, has maintained the position that the administrative record was complete. For example:

- In her deposition, plaintiff was asked: "As you sit here today, are there any materials that you wanted to submit to – on your appeal to the fund that you didn't submit." (Affirmation of Jules L. Smith Ex. A. 39:15-17, ECF No. 33.) Plaintiff responded: "Not specifically related to this denial, no." (Id. 39:18-19.)

- In defendant's Local Rule 56.1 statement submitted in 2013, defendant stated: "The evidence in the record considered by the Trustee was complete." (Defendants' Statement of Material Facts as to Which There Is No Genuine Issue ¶ 29, ECF No. 34.) In response, plaintiff stated: "Agree." (Response to [sic] Plaintiff's Statement of Undisputed Facts ¶ 29, ECF No. 39.)

- After Halo was decided, plaintiff stated in her reply brief to the Second Circuit on appeal in this case: "With respect to the adverse benefit determination addressing medical necessity, the parties

agree that [the] administrative record is complete." (Reply Brief for

Plaintiff-Counter-Defendant-Appellant, Case No. 16-0712-cv, at 2.)[6]

In addition, unlike in <u>Halo</u>, the Second Circuit did not direct this Court to consider

whether to supplement the administrative record; this is likely because of plaintiff's

express statement before that court that the record was complete.

It is a close call, and the Court does not now need to decide whether to

supplement the administrative record. Conducting a <u>de novo</u> review, the Court

concludes that there is no genuine dispute of any material facts and, as a matter of

law, that plaintiff was properly denied benefits under the Plan with regard to Dr.

Nicholson regardless of whether the administrative record is supplemented as

plaintiff proposes. In addition, as the Court concludes that there are genuine

disputes of material fact with regard to Levine based on the administrative record

<u>alone</u>, the Court does not here decide whether to supplement the administrative

record on this issue—plaintiff can renew her argument at trial.

III.    DISCUSSION

As discussed above, defendants based their adverse-benefit determination for

services provided by Dr. Nicholson and Levine on their conclusion that such services

were not "medically necessary" and thus not covered by the Plan. Defendants now

ask this Court to reach the same conclusion; plaintiff, in contrast, argues that the

---

[6] The fact that plaintiff made this statement to the Second Circuit <u>after</u> <u>Halo</u> negates any argument before this Court that plaintiff's changed position should be excused because that the relevant legal landscape has changed.

services provided by Dr. Nicholson and Levine were "medically necessary" under the Plan. Reviewing the Plan and administrative record de novo, the Court concludes that there are no genuine disputes as to any material facts and plaintiff was properly denied benefits under the Plan as a matter of law with regard to Dr. Nicholson. With regard to Levine, however, there are genuine disputes as to material facts regarding whether plaintiff was improperly denied coverage under the Plan.

Below, the Court describes the applicable Plan provision, examines the relevant medical evidence, and describes how such evidence supports the Court's determination. As the Court details, the evidence appears to favor plaintiff's position with regard to Levine. Nevertheless, because there is some dispute among the experts, the Court is prepared to conduct a trial on this issue and weigh the credibility of the experts before making a final determination.

A. Applicable Plan Provision

The Plan provision at issue here provides:

Unless otherwise stated in this Summary Plan Description, Plan benefits are only provided for medically necessary care for expenses that are considered usual, reasonable and customary as described below:

**Medically Necessary or Medical Necessity** means health [sic] care services that a physician, exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms, and that are:

(1) In accordance with generally accepted standards of medical practice;

17

(2) Clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for the patient's illness, injury or disease, and

(3) Not primarily for the convenience of the patient, physician, or other health care provider and

(4) Not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of the patient's illness, injury or disease.

"Generally accepted standards of medical practice" means standards that are based on credible scientific evidence published in peer reviewed medical literature generally recognized by the relevant medical community when available. Physician Specialty Society recommendations, the views of prudent physicians practicing in relevant-clinical areas, and any other clinically relevant factors.

The parties do not dispute the interpretation of this provision or any of the Plan's terms; rather, they only dispute the provision's application to the facts here.

B.    Medical Evidence

As already noted, plaintiff suffers from severe OCD with symptoms that include fear of physical and moral contamination, skin picking, excessive cleaning, and fear of certain numbers. Plaintiff also suffers from additional mental illnesses. The record medical evidence is largely undisputed. Specifically, the record includes reports from CCM-retained experts Dr. Anthony and Dr. Rater, letters from four of plaintiff's health care providers (Levine, Dr. Nicholson, Dr. Badikian, and Dr. Danyko), and a letter from plaintiff herself.

1.    Plaintiff's Letter

Plaintiff submitted a letter to the Fund on her own behalf on November 7, 2013. (Kim Decl. Ex. 7, ECF No. 95-7, at 1-3.) Plaintiff provides an overview of her

symptoms and explains that she was receiving psychotherapy from Levine, a licensed social worker, somewhat consistently for five years. (Id.) She explains that therapy with Levine consisted of stress reduction and learning how to manage events so that they would not exacerbate plaintiff's OCD. (Id.) Plaintiff explains that Levine's treatment greatly helped plaintiff minimize the impact of her OCD and that, with Levine's help, plaintiff can keep her OCD to a functional level. (Id.) Plaintiff states that she has experienced regression and an increased manifestation of symptoms since she stopped treatment with Levine. (Id. at 2.)

2.     Dr. Nicholson's Letter

In his letter to the Fund, Dr. Nicholson—plaintiff's treating psychiatrist— provides an overview of his treatment history with plaintiff, which commenced in April 2013. (Kim Decl. Ex. 7, ECF No. 95-7, at 5.) Dr. Nicholson explains that plaintiff's other mental illnesses, such as Posttraumatic Stress Disorder, as well as relationship problems with her mother, exacerbate her OCD symptoms. (Id.) These issues, Dr. Nicholson reports, were being treated by plaintiff's social worker, with whom she had a strong therapeutic relationship. (Id.) Dr. Nicholson notes that it was recommended for plaintiff to take medication as part of her OCD treatment, but that plaintiff's anxiety prevented her from doing so. (Id.) According to Dr. Nicholson, plaintiff's inability to take medication was preventing further improvement of her OCD symptoms. (Id.) Dr. Nicholson explained that, under his care, plaintiff has been engaged in Exposure/Response Prevention Therapy ("Ex/RP") as well as Habit Reversal Therapy ("HRT"). According to Dr. Nicholson,

plaintiff "will require far greater than 20 weeks of once weekly treatment to produce a durable and significant change in her functioning." (Id.)

### 3.  Dr. Danyko's Letter

Dr. Dankyo, a licensed psychologist who previously treated plaintiff, also submitted a letter to the Fund. (Kim Decl. Ex. 7, ECF No. 95-7, at 10.) Dr. Danyko explains plaintiff's illness and symptoms, as well as her treatment history with him. (Id.) Dr. Danyko opines that plaintiff should engage in Exposure/Response treatment with a psychiatrist three times per week and supporting psychotherapy one time per week. (Id.) He explained that the psychotherapy was to address the multiple stressors in plaintiff's life that don't necessarily get addressed in Exposure Response treatment. (Id.)

### 4.  Levine's Letter

Levine—plaintiff's social worker—also submitted a letter to the Fund. (Kim Decl. Ex. 7, ECF No. 95-7, at 11-12.) Levine explains that he works with plaintiff to differentiate between irrational/exaggerated fears and the more commonplace worries of the world. (Id. at 11.) Levine explains that it was only after multiple sessions with plaintiff directed at reducing her anxiety was plaintiff able to initiate a course of medication (Lexapro). (Id. at 12.) Due to side effects, plaintiff ultimately stopped taking Lexapro, but Levine is hopeful that a collaborative effort will allow plaintiff to try a new drug. (Id.) Levine also explains that he was working with plaintiff to improve her communication and relationship skills, which

Levine opined was important for plaintiff to be able to interact effectively with her treatment team. (Id.)

### 5. Dr. Badikian's Letter

Dr. Badikian, plaintiff's former psychiatrist (who treated plaintiff on and off for seven years), submitted a letter to the Fund, explaining that it was clear plaintiff needed to be treated with psychotherapy in addition to medication. (Kim Decl. Ex. 7, ECF No. 95-7, at 8.) Furthermore, Dr. Badikian notes that plaintiff "has made a great deal of progress as a result of combining pharmacological treatment with ongoing psychotherapy" and that plaintiff has reported that Levine, together with her, have been arduously working at these numerous issues with clear-cut progress." Dr. Badikian states that in his opinion, evidence-based studies have clearly shown the need for a multifaceted, combination approach to treat plaintiff's complex disorder. (Id.) Accordingly, Dr. Badikian explains that it in his professional opinion "all modalities should be available to Mrs. Tedesco." (Id. at 9.)

### 6. Dr. Anthony's Report

Dr. Anthony, who reviewed plaintiff's progress notes and spoke with Levine (but not Dr. Nicholson), completed a report concerning plaintiff on October 15, 2013, acknowledging that plaintiff has severe OCD. (Kim Decl. Ex. 3, ECF No. 95-3, at 8.) Dr. Anthony further acknowledges that plaintiff's treatment notes indicate that she made significant progress working with Levine. (Id.) Dr. Anthony was asked: "Are continued visits with the psychologist and LCSW [Levine] medically appropriate for this member?" (Id.) In response, he states: "Continued visits with the LCSW are

not medically appropriate for this member.  Continued visits with the psychologist are medically appropriate for this member.  In regards to therapy provided by the LCSW, this provider is not treating the more acute OCD symptoms and the goals of treatment are primarily for providing support, and the targets are primarily symptoms and behaviors which are either chronic and not likely to improve with the type of treatment being used." (Id.)  Dr. Anthony further opines that plaintiff's treatment with the psychologist should be weekly for 13-20 weeks followed by monthly booster sessions for 3-6 months.  (Id.)

7.    Dr. Rater's Report

Dr. Rater submitted his report concerning plaintiff on December 23, 2013. (Kim Decl. Ex. 3, ECF No. 95-8, at 8-20.)  Dr. Rater recounts plaintiff's treatment history and also acknowledges that plaintiff has severe OCD.  (Id.)  Dr. Rater was also asked: "Are visits with Shaun Levine . . . medically necessary for [plaintiff]?" (Id. at 17.)  He responds: "No. Visits with Mr. Levine after 10/14/13 are not medically necessary." (Id.)  Dr. Rater notes that according to certain peer-reviewed literature, psychodynamic therapy can help a person sort out conflicts in important relationships or explore the history behind symptoms, though insight itself is not likely to have an impact on severe symptoms.  (Id.)  He further explains that the American Psychiatric Association ("APA") practice guidelines for the treatment of OCD state that such therapy may be useful in working on a patient's resistance to treatment or in helping the patient to appreciate the interpersonal affects that her OCD symptoms are having on others.  (Id.)  Dr. Rater notes, however, that

psychotherapy "alone has generally not been found to be helpful in ameliorating OCD symptoms." (Id.) With regard to Dr. Nicholson, Dr. Rater opines that continued treatment is medically necessary and recommended that such therapy be done twice weekly for the next sixteen weeks, with a reassessment at that time. (Id. at 19.)

### C. Defendants' Adverse-Benefit Determination

#### 1. Treatment by Dr. Nicholson

Considering de novo the plain language of the relevant Plan provision, together with the record evidence described above, the Court concludes that defendants' adverse-benefit determination with regards to Dr. Nicholson was correct as a matter of law. As discussed above, the Fund concluded that treatment by a psychiatrist (such as Dr. Nicholson) up to twice a week was for 16 weeks was medically necessary but that after the 16 weeks, such treatment should be reevaluated for continued medical necessity.[7] This conclusion is wholly supported by the undisputed facts in the record.

Critically, the Fund's determination does not put a definitive cap on the length of time plaintiff may receive treatment from Dr. Nicholson. Rather, after 16 weeks, plaintiff is simply required to submit documentation demonstrating that treatment remains medically necessary. It is entirely possible, consistent with defendants' determination, that upon submission of such documentation plaintiff

---

[7] Though Dr. Anthony recommended once a week treatment, the Fund approved twice weekly treatment after receiving Dr. Rater's report.

will be covered for additional treatment after 16 weeks. Accordingly, defendants'
determination is consistent with all of the record evidence and expert opinion's
(including Dr. Nicholson). The Fund's decision with regards to Dr. Nicholson was
not erroneous in any respect and summary judgment is properly awarded to
defendants on this point. See Tretola v. First Unum Life Ins. Co., 2015 WL 509288,
at *23 (granting summary judgment in part on plaintiff's denial of benefits claim
where "there is no basis on which a reasonable factfinder could find" that
defendant's determination was improper).

2. Treatment by Levine

In contrast, considering de novo the plain language of the relevant Plan
provision, together with the record evidence described above, this Court concludes
that there are genuine disputes of material facts regarding whether defendants'
adverse-benefit determination concerning Levine was correct. Put differently, there
is competing evidence (including expert opinion) in the record on whether Levine's
services were "medically necessary" as defined by the Plan. Although the evidence
appears to favor plaintiff's position, final determination is inappropriate at the
summary judgment stage; a trial is appropriate to weigh the expert opinion
evidence. This determination is driven by the applicable de novo standard of
review, which does not afford any deference to defendants.[8]

---

[8] Defendants argue that substantial evidence supports the Fund's denial of benefits. But as the
Court discussed above, substantial evidence is not the proper focus when reviewing the Fund's
determination de novo.

The Second Circuit has noted that "[u]nless the contrary is specified, the term 'medical necessity' must refer to what is medically necessary for a particular patient, and hence entails an individual assessment rather than a general determination of what works in the ordinary case." Mario v. P & C Food Markets, Inc., 313 F.3d 758, 765 (2d Cir. 2002). Critically, Dr. Anthony and Dr. Rater's findings that Levine's treatment of plaintiff was not medically necessary do not appear, at least on their face, to be based directly on plaintiff's particular medical record and circumstances. Rather, they appear to have been based on generic guidance. Viewing the medical opinions provided by Dr. Anthony and Dr. Rater in conjunction with plaintiff's individual circumstances suggests to the Court that Levine's services may very well be medically necessary as defined by the Plan.[9]

All of the physicians involved in this case (including Dr. Anthony and Dr. Rater) agree that Exposure/Response treatment provided by a psychiatrist, in conjunction with medication, improves OCD symptoms. Significantly, all of the physicians further acknowledge that plaintiff's symptoms hinder her ability to comply with that treatment regimen. This suggests that Levine's services are medically necessary. For example, Dr. Rater explains that the APA practice guidelines for the treatment of OCD state that such psychodynamic therapy may be

---

[9] The Court notes that under arbitrary and capricious review, the Fund's determination could be upheld even where there is substantial evidence to support both the Fund and plaintiff's position. See Roganti v. Metro. Life Ins. Co., 786 F.3d 201, 212 (2d Cir. 2015) ("Put differently, if the administrator has cited 'substantial evidence' in support of its conclusion, the mere fact of conflicting evidence does not render the administrator's conclusion arbitrary and capricious.") However, reviewing the record de novo, the Court does not defer to the Fund's determination.

useful in working on a patient's resistance to treatment or in helping the patient to appreciate the interpersonal affects that her OCD symptoms are having on others. Specifically, the APA guidelines note "psychotherapy may . . . be useful in helping patients overcome their resistance to accepting a recommended treatment by illuminating their reasons for wanting to stay as they are . . . it may also be useful in addressing the interpersonal consequences of the OCD symptoms." (Reply Declaration of Eric Weinstein Ex. B, ECF No. 103-2, at 12.) The record evidence indicates that plaintiff's therapy with Levine served this very purpose. It is true that Dr. Rater stated that psychotherapy "alone has generally not been found to be helpful in ameliorating OCD symptoms." But, again, plaintiff here is not seeking psychotherapy treatment <u>alone</u>. Rather, she has received effective treatment, and sought continued treatment, for supportive psychotherapy <u>combined</u> with other forms of treatment.[10] This fact also is important in considering Dr. Anthony's conclusion that psychotherapy does not target the "acute" symptoms of OCD.

Although much of the evidence weighs in favor of plaintiff, this Court is mindful "of the Second Circuit's teaching that it is inappropriate for a court to grant summary judgment where the resolution of an ERISA benefits dispute entails adopting one medical expert's opinion over another." <u>Tretola</u>, 2015 WL 509288, at *23; <u>see</u> <u>Napoli v. First Unum Life Ins. Co.</u>, 78 F. App'x. 787, 789 (2d Cir. 2003)

---

[10] The Court does not now consider Dr. Rater's medical opinions contained in his supplemental declaration at ECF No. 100. Like the supplemental declaration submitted by Dr. Nicholson, this declaration is not part of the administrative record.

("Such a credibility determination is appropriate at a trial, but it exceeds the scope of a judge's authority in considering a summary judgment motion."). In some respects, Dr. Rater and Dr. Anthony's expert opinions seem compatible (and supportive) of plaintiff's position and the medical opinions she offers, as discussed above. Nevertheless, because Dr. Rater and Dr. Anthony ultimately reach the conclusion that Levine's services are not medically necessary, the Court will make credibility determinations at trial. After further weighing the evidence then, the Court will determine whether Levin's treatment is a service that a "physician, exercising prudent clinical judgment, would provide to" plaintiff—given her particular circumstances—"for the purpose of . . . treating" her OCD.

D.    Defendants Claim to Overpayments

In her operative complaint, plaintiff's third cause of action (labeled "Unlawful Exercise of Set-Off Against the Fund") sought to challenge the Fund's right to off-set any overpayment of benefits by the Fund. (See First Amended Complaint ¶¶ 81-96, ECF No. 9.) Relatedly, in their Amended Answer, defendants asserted a counter-claim against plaintiff to recover payments improperly paid by the Fund under the Plan. (See First Amended Answer and Counterclaim, ECF No. 13, at 13-14.) After this Court granted defendants' motion for summary judgment and denied plaintiff's motion for summary judgment—but before judgment was entered—the Court granted defendants' request to voluntarily dismiss their counterclaim pursuant to Federal Rule of Civil Procedure 41(a)(2). (ECF No. 80.) Accordingly, defendants' counterclaim was not part of the record on appeal.

On Appeal, the Second Circuit affirmed this Court's dismissal of plaintiff's third cause of action. Even though defendants' counterclaim was not before the Second Circuit on appeal, the Second Circuit "remand[ed] for the district court to determine the amount of money the Fund is entitled to recover."

Despite the Second Circuit's instruction, there is no live claim for this Court to adjudicate regarding the Fund's entitlement to recover any overpayment, if any. Indeed, defendants acknowledge in their renewed motion for summary judgment that "there is no case or controversy before the Court seeking judgment concerning the amount of off-set to which the Fund is entitled." (Defs.' Mem. in Supp. at 17.) Accordingly, this Court lacks the power to address any potential off-set. It appears to this Court that the Second Circuit's instruction may understandably have been caused by some confusion due to the similarity between plaintiff's third cause of action and defendants' counterclaim.

IV.    CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART and plaintiff's cross-motion for summary judgment is GRANTED IN PART and DENIED IN PART.

This matter is hereby scheduled for trial on **October 24, 2017**. Alternatively, the parties may waive the trial and allow the Court to proceed to final resolution of this action on the existing record alone. If the parties would prefer to proceed in this manner, they shall inform the Court not later than **August 31, 2017**.

The Clerk of Court is directed to terminate the motions at ECF Nos. 87, 91.

SO ORDERED.

Dated:     New York, New York
           August 21, 2017

_____
          KATHERINE B. FORREST
        United States District Judge